# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUIS ALEXANDER VASQUEZ | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15-cv-2106 (GMH) |
| GRUNLEY CONSTRUCTION CO., INC. et al. | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

This case was referred to this Court for all purposes. Currently ripe is Plaintiff's motion for conditional class certification. After reviewing the entire record,[1] the Court will grant in part and deny in part the motion.

## BACKGROUND

Plaintiff is a carpenter who worked on a large-scale renovation project at the Watergate hotel in Washington, D.C. Plaintiff's Amended Complaint [Dkt. 1] ¶ 20. Defendant Grunley Construction Co. was the general contractor on the project. Id. ¶ 22. Defendant C.R. Calderon Construction was a carpentry subcontractor hired by Grunley. Id. ¶ 1. Defendant Garfias Drywall & Finish, which has not appeared in this action and is in default, see Clerk's Entry of Default [Dkt. 34], was an unlicensed labor recruiter. Plaintiff's Amended Complaint [Dkt. 1] ¶¶ 1, 12. Garfias allegedly recruited Plaintiff and several other carpenters to work for Calderon on

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's Memorandum in Support of his Motion for Conditional Certification of Collective Action [Dkt. 26-1] ("Mot."); (2) Defendants' Opposition to Plaintiff's Motion for Conditional Certification of Collective Action [Dkt. 31] ("Opp."); and (3) Plaintiff's Reply in Support of His Motion for Conditional Certification of Collective Action [Dkt. 36] ("Reply").

the Watergate project.  Id. ¶ 23.  These carpenters, including Plaintiff, were not supervised by Garfias at the project; instead, Calderon directly supervised them.  Id. ¶¶ 25–31.  The Watergate project involved long workdays – Plaintiff alleges twelve hours each weekday and ten hours each Saturday – and lasted for ten weeks, beginning in August 2015.  Id. ¶¶ 26, 34.  Garfias promised that Plaintiff and his coworkers would be paid for their work, but Plaintiff alleges that neither Garfias, Calderon, nor Grunley ever paid.  Id. ¶¶ 24, 34.

As a result, Plaintiff brings the instant claims against all Defendants under:  (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) the District of Columbia Minimum Wage Act Revision Act ("DCMWRA"), D.C. Code § 32-1301 et seq.; (3) the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 et seq.; and (4) the District of Columbia Wage Theft Prevention Amendment Act ("DCWTPAA"), D.C. Code §§ 32-1001-15, 32-1301-11.  Id. ¶¶ 44–62.  Plaintiff seeks to bring his claims on behalf of himself and others similarly situated as a collective action under the FLSA, 29 U.S.C. § 216(b), and the DCMWRA, D.C. Code § 32-1308.  Mot. at 1.

## DISCUSSION

In his motion, Plaintiff asks the Court to conditionally certify the following class:

> all non-exempt employees who performed construction duties for the Defendants at the Watergate Hotel renovation project at 2650 Virginia Avenue, N.W., Washington, D.C. from on or about August 3, 2015 to the final disposition of this action.

Mot. at 1.  Plaintiff requests conditional certification under both the FLSA and the DCMWRA.  See id. at 1–2.  Because the standards governing each are (or at least may) be different, the Court will treat each separately below.

### A.     Collective Action Under the FLSA

The FLSA requires employers to pay their workers the minimum wage and, if the employee works more than forty hours in a workweek, overtime compensation.  29 U.S.C. § 207(a)(1).  The FLSA empowers employees to bring actions on their own behalf and on behalf of "other employees similarly situated" in a collective action.  Id. § 216(b).  A collective-action class is formed only by potential members opting into it.  Id.; Castillo v. P & R Enterprises, Inc., 517 F. Supp. 2d 440, 444 (D.D.C. 2007).  A collective action is a "unique cause of action . . . not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23." Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004).

Courts in this Circuit and others have implemented a two-stage inquiry for determining when a collective action is appropriate.  Dinkel v. MedStar Health, Inc., 880 F. Supp. 2d 49, 52 (D.D.C. 2012).  The first stage, referred to as "conditional certification," requires the Court to determine whether it is appropriate "'to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether [an] FLSA violation has occurred.'"  Id. at 52–53 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).  At the second stage, defendants may move at the close of discovery to "decertify the conditional class if the record establishes that the plaintiffs are not, in fact, similarly situated."  Ayala v. Tito Contractors, 12 F. Supp. 3d 167, 170 (D.D.C. 2014).

At issue here is the first stage – conditional certification.  This initial stage requires only that the plaintiff "make a 'modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Castillo, 517 F. Supp. 2d at 445 (quoting Chase v. AIMCO Props., 374 F. Supp. 2d 196, 200 (D.D.C. 2005)).  The bar at this stage is quite low.  Ayala, 12 F. Supp. 3d at 170 (collecting

3

cases). The plaintiff must present, through the allegations in his pleadings and any affidavits submitted with his motion, "'some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees.'" Id. (quoting Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011)). At this early juncture, the Court accepts as true the plaintiff's factual allegations set forth in his complaint. See id. at 169; see also In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 14 (D.D.C. 2001) (plaintiff's allegations are accepted as true on a motion for class certification under Rule 23). Conversely, "[d]uring the second stage, a court's inquiry is typically more searching." Ayala, 12 F. Supp. 3d at 170.

Plaintiff argues that he is similarly situated to potential class members. Mot. at 3. Plaintiff submitted an affidavit in connection with his motion in which he avers that he worked as a carpenter for Garfias and Calderon at the Watergate project from early August 2015 to the end of October 2015. Declaration of Luis Alexander Vasquez [Dkt. 26-2] ¶ 1. He claims that approximately six other carpenters worked with him on the same tasks during that timeframe. Id. ¶ 2. All seven of them were recruited by Garfias, but Calderon employees, not Garfias employees, supervised their work on-site. Id. ¶¶ 4–6. Additionally, the tools and equipment they used were furnished by Calderon. Id. ¶ 6. Finally, Plaintiff avers that although Garfias promised him $18.00 per hour and that he regularly worked significant overtime hours, neither he nor his coworkers were ever paid. Id. ¶¶ 3, 7; Plaintiff's Amended Complaint [Dkt. 1] ¶¶ 33, 34 (alleging that Plaintiff and his coworkers worked significant overtime hours and were never paid for their work at Watergate).

Based on these sworn statements and the allegations in his pleadings, Plaintiff contends that he is similarly situated to the potential class members in two key respects. First, their work

was controlled by all three Defendants because they were recruited by Garfias and received orders from Calderon foremen throughout their time working at the Watergate project. Mot. at 3. Second, Plaintiff and the other potential class members all suffered the same non-payment of wages or overtime compensation in violation of the FLSA and D.C. law. Id. at 3–4.

In its response, Grunley argues that Plaintiff's proposed class is overly broad. Opp. at 5.[2] Despite the limited nature of Plaintiff's work as a carpenter recruited by Garfias for a ten-week period in late 2015, Grunley contends, he now proposes "an expansive class definition that would turn a single second-tier subcontractor's purported failure to pay wages to a small handful of carpenters for twelve weeks into a collective action that would encompass every single individual who performed any construction-related work whatsoever on the Project over the course of perhaps a year or more." Id. at 5–6. In Grunley's view, Plaintiff has at most shown that he is similarly situated to "the few carpenters hired by Garfias to perform carpentry work between August 2015 and October 2015." Id. at 6.

At the request of the Court, Plaintiff filed a reply in support of his motion. See Apr. 12, 2016 Minute Order. The Court asked that Plaintiff propose a more limited class definition in light of Defendants' overbreadth concerns. Id. Without conceding that Defendants' concerns have merit, Plaintiff proposed the following alternative class definition:

> All non-exempt employees who performed carpentry work at the Watergate hotel renovation at 2650 Virginia Avenue, N.W., Washington, D.C., for Garfias Drywall & Finish, LLC and C.R. Calderon Construction, Inc., from August, 2015, until the final disposition of this action.

Reply at 2.

---

[2] Calderon joined in Grunley's opposition and offered no separate arguments. See Calderon's Opposition to Plaintiff's Motion for Conditional Certification of Collective Action [Dkt. 35].

The Court finds that Plaintiff has made the modest showing required of him for conditional certification of the more limited class he proposed in his reply. Under that narrower definition, Plaintiff has shown by his pleadings and declaration that the potential class members: (1) were all recruited by the same company, Garfias; (2) were all assigned to work together on similar carpentry tasks at the Watergate project; (3) were all supervised by Calderon and supplied with tools and equipment by Calderon; (4) were all required to work overtime; and (5) were all paid nothing for their work. Thus, the nature of Plaintiff's work was the same as those of the other class members and Defendants' violations of the FLSA and D.C. law were identical with respect to each class member. While these facts do not necessarily establish that the potential class members were treated uniformly, "uniformity is not a prerequisite" to conditional class certification under the FLSA. Ayala, 12 F. Supp. 3d at 169. Rather, Plaintiff need only show that his position and the FLSA violations he suffered are similar to that of putative class members, and he has made that showing here. Id. (conditionally certifying class of construction laborers who worked for the same company, were required to work overtime but were not paid for it). Indeed, this case presents a putative class more uniform than others conditionally approved in this District. See Castillo, 517 F. Supp. 2d at 447 (conditionally certifying class of janitorial workers allegedly not paid for overtime although, among other differences, they worked in different locations and had different job titles).

Plaintiff's original class definition, by contrast, is overbroad. That definition purports to cover all employees of all Defendants at the Watergate project. Mot. at 1. Because Grunley, the general contractor for the project, is one defendant in this case, the class definition therefore contemplates every employee working for any subcontractor or sub-subcontractor anywhere on the project site during the relevant period. But Plaintiff's complaint and declaration are devoid

6

of any allegation that Watergate workers outside the group recruited by Garfias had similar job duties, worked overtime, or were promised and denied payment by their respective supervisors or recruiters.  See Dinkel, 880 F. Supp. 2d at 55 (excluding from class definition putative members who worked in different units, with different shifts and schedules, under different supervisors, performing different functions, for varying levels of pay).  While Plaintiff has shown that he is similarly situated to his fellow carpenters recruited by Garfias, he has failed to come forward with colorable evidence of a larger wage and overtime problem at the Watergate.  See Castillo, 517 F. Supp. 2d at 446 (conditionally certifying class composed of all employees of a company, not just a particular division, where plaintiffs demonstrated that the company had a uniform policy of refusing to pay any overtime).

Accordingly, the Court will conditionally certify Plaintiff's proposed FLSA class action using the more limited definition proposed in Plaintiff's reply.

### B. Class Action Under the DCMWRA

Like the FLSA, the DCMWRA requires employers to pay minimum wage and overtime compensation.  See D.C. Code § 32-1003.  The DCMWRA also permits actions on a class basis.  Id. § 32–1308(a)(1); see also D.C. Code § 32–1012(a) ("A civil action [under the DCMWRA] may be commenced according to § 32–1308.").  The DCMWRA used to mirror the language of the FLSA in requiring that collective actions could be maintained strictly on an opt-in basis.  See Eley v. Stadium Grp., LLC, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *4 (D.D.C. Sept. 22, 2015); Rivera v. Power Design, Inc., Civil Action No. 15-cv-0975 (TSC), 2016 WL 1226433, at *8 (D.D.C. Mar. 28, 2016); D.C. Code § 32–1012(b) (2001) ("No employee shall be a party plaintiff . . . unless the employee gives written consent to become a party and the written consent is filed in the court in which the action is brought.").  The statute was amended in

early 2015 and now provides that a DCMWRA class action "may be maintained by one or more employees who may designate an agent or representative to maintain such action for and on behalf of themselves or on behalf of all employees similarly situated." D.C. Code § 32–1308(a)(1). This amendment removed the opt-in and written-consent procedures previously required to maintain a DCMWRA collective action. See Eley, 2015 WL 5611331, at *4.

Only two Courts in this District have addressed a motion for conditional class certification under the amended DCMWRA. Eley, 2015 WL 5611331, at *4; Rivera, 2016 WL 1226433, at *8. Both have denied the motion, finding that "[w]ithout opt-in and written-consent procedures that restrict the right of recovery to those who affirmatively file consents to participate in the suit, group claims brought under the new [DCMWRA] are likely to resemble class actions, rather than collective actions." Eley, 2015 WL 5611331, at *4 (quotation, citations, and alterations omitted); Rivera, 2016 WL 1226433, at *8. As a result, Plaintiff's prospective DCMWRA class action "would presumably be governed by Federal Rule of Civil Procedure 23." Rivera, 2016 WL 1226433, at *8; Eley, 2015 WL 5611331, at *4. Both Courts concluded that "it may well be that Plaintiffs here cannot proceed on their [DCMWRA] claims utilizing the procedures applicable to the FLSA, and instead, they may be required to seek class certification under Rule 23." Eley, 2015 WL 5611331, at *4; Rivera, 2016 WL 1226433, at *8. While acknowledging that it is unclear whether Rule 23 certification is required for DCMWRA class actions, neither Court would grant conditional certification under the FLSA's collective-action procedures without further briefing on the issue. Eley, 2015 WL 5611331, at *4; Rivera, 2016 WL 1226433, at *8.

The circumstances here are identical to Eley and Rivera. Plaintiff seeks conditional certification of his proposed class pursuant to the DCMWRA. Mot. at 1. Yet he devotes no

argument, or even passing mention, to whether a collective action is still available under the amended DCMWRA.  Id.  Indeed, Plaintiff cites the former version of the DCMWRA to the Court in his brief.  Id. at 1–2.  Like the Courts in Eley and Rivera, this Court is hesitant to conclude that Plaintiff may obtain conditional class certification under the DCMWRA despite the 2015 amendments to the statute.  Because Plaintiff has failed to address this issue in any way, the Court will deny conditional certification under the DCMWRA at this time.  Plaintiff may, if he chooses, move for conditional certification of his class under that statute at a later time.

      C.     **Notice and Opt-In Period**

The final issue to be decided is how to provide notice to the potential class members and how long any potential class member should have to opt in to the instant suit.  At a scheduling conference held on April 12, 2016, Calderon represented that it anticipates that the class as defined in Plaintiff's reply would comprise no more than eight to ten individuals.  However, Plaintiff and Defendants agreed that providing notice to these individuals may be difficult because they may not speak English as a first language, did not provide addresses or phone numbers to any Defendant (except perhaps Garfias, but it has not appeared), and may have used false names when applying for employment.  Because providing notice may be time-consuming, the Court concurs in the parties' recommendation that the opt-in period in this case should be sixty days.

As for the contents and transmission of the notice itself, the Court directs the parties to meet and confer regarding what should be contained in the notice and how it should be sent to putative class members.  The parties will thereafter file a joint status report with a joint proposed notice attached.  If disputes regarding these issues cannot be reconciled by the parties informally,

the parties will briefly set forth in the joint report the nature of any dispute and the parties' respective positions.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Certification of Collective Action [Dkt. 26] is **GRANTED IN PART** and **DENIED IN PART**.  An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.

Date:  April 18, 2016                                  _____
                                                                        G. MICHAEL HARVEY
                                                                        UNITED STATES MAGISTRATE JUDGE