**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| | ) |
| **LUIS ALEXANDER VASQUEZ et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )        **Case No. 15-cv-2106 (GMH)** |
| | ) |
| **GRUNLEY CONSTRUCTION CO.,** | ) |
| **INC. et al.** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## <u>MEMORANDUM OPINION</u>

This case was referred to this Court for all purposes.  Currently ripe is Plaintiffs' motion

for conditional certification of a collective action under the D.C. Minimum Wage Revision Act

("DCMWRA"), D.C. Code § 32-1001 *et seq.*  After reviewing the entire record,[1] the Court will

deny the motion.

## BACKGROUND

The Court explained the facts of this case in a prior opinion.  *Vasquez v. Grunley Constr.

Co.*, Case No. 15-cv-2106 (GMH), 2016 WL 1559131 (D.D.C. Apr. 18, 2016).  The Court will

recount here only the facts pertinent to the adjudication of Plaintiffs' motion.  Plaintiffs are a

group of carpenters who worked on a large-scale renovation project at the Watergate hotel in

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are:  (1) Plaintiffs' Memorandum in
Support of Their Motion for Conditional Certification of an Opt-In Collective Action Under the D.C. Minimum
Wage Revision Act ("Mot.") [Dkt. 48-1]; (2) Defendant Grunley's Opposition to Plaintiffs' Motion for Conditional
Certification of an Opt-In Collective Action Under the D.C. Minimum Wage Revision Act ("Grunley Opp.") [Dkt.
52]; (3) Defendant Calderon's Opposition to Plaintiffs' Motion for Conditional Certification of an Opt-In Collective
Action Under the D.C. Minimum Wage Revision Act ("Calderon Opp.") [Dkt. 53]; and (4) Plaintiffs' Reply in
Support of Their Motion for Conditional Certification of an Opt-In Collective Action under the D.C. Minimum
Wage Revision Act [Dkt. 54] ("Reply").

Washington, D.C.  Amended Complaint [Dkt. 1] ¶ 20.  Defendant Grunley Construction was the general contractor on the project.  *Id.* ¶ 22.  Defendant C.R. Calderon Construction was a carpentry subcontractor, and Defendant Garfias Drywall & Finish was an unlicensed labor recruiter that recruited Plaintiffs for Calderon.  *Id.* ¶¶ 1, 12.  Plaintiffs allege that none of the defendants ever paid them for their work.  *Id.* ¶¶ 24, 34.

Plaintiff Vasquez originally brought claims against all Defendants under:  (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) the DCMWRA, D.C. Code § 32-1001 *et seq.*; (3) the District of Columbia Wage Payment and Collection Law, D.C. Code § 32-1301 *et seq.*; and (4) the District of Columbia Wage Theft Prevention Amendment Act, D.C. Code §§ 32-1001-15, 32-1301-11.  *Id.* ¶¶ 44–62.  He also sought to bring his FLSA and DCMWRA claims on behalf of himself and others similarly situated as a collective action.  *Id.* ¶ 35; *see also* 29 U.S.C. § 216(b); D.C. Code § 32-1308(a)(1).

On March 7, 2016, Plaintiff Vasquez moved for conditional certification of collective actions under both the FLSA and DCMWRA.  Plaintiff's Motion to Certify Class [Dkt. 26].  On April 18, 2016, the Court granted that motion in part.  *Vasquez*, 2016 WL 1559131, at *4.  The Court granted conditional certification of the following collective action under the FLSA:

> All non-exempt employees who performed carpentry work at the Watergate hotel renovation at 2650 Virginia Avenue, N.W., Washington, D.C., for Garfias Drywall & Finish, LLC and C.R. Calderon Construction, Inc., from August 2015, until the final disposition of this action.

*Id.*

The Court denied without prejudice the motion to conditionally certify the DCMWRA collective action, however.  *Id.*  As explained in that opinion, the DCMWRA previously mirrored the language in the FLSA that provides for collective action based on the written consent of each class member to opt in to the suit.  *Id.*  That language was removed from the statute in

amendments to the DCMWRA enacted in early 2015, long before the conduct at issue in this

case. *Id.* Without that language, the Court noted that group actions under the DCMWRA may

now more closely resemble traditional, opt-out class actions under Federal Rule of Civil

Procedure 23. *Id.* Plaintiff did not argue that certification of the DCMWRA claim was

appropriate under Rule 23, and he did not give any reasons why, in light of the amendments to

the DCMWRA, the Court should still treat the statute as providing for collective actions like the

FLSA. *Id.* The Court therefore denied the motion but permitted Plaintiffs to address the Court's

concerns in a renewed motion.

Plaintiffs filed that motion on May 20, 2016. Defendant Grunley responded on June 10,

2016, and Defendant Calderon responded on June 15, 2016. Plaintiffs replied on June 16, 2016,

and so the motion is ripe for disposition.

## DISCUSSION

In their motion, Plaintiffs ask the Court to conditionally certify under the DCMWRA the

same collective action it has already conditionally certified under the FLSA. Mot. at 1. The

issue before the Court, however, is not whether conditional certification is appropriate on these

facts. The Court has already concluded that it is. *Vasquez*, 2016 WL 1559131, at *4. The only

question presented now is whether the 2015 amendments to the DCMWRA removed collective

actions as an avenue for bringing group claims, leaving DCMWRA plaintiffs the ability to

pursue such claims solely under the traditional class-action procedures in Rule 23.[2] Because the

motion rests in large part on the important differences between the FLSA and Rule 23, the Court

---

[2] It may seem odd for Plaintiffs to seek conditional certification of two collective actions, one under the FLSA and one under the DCMWRA, but this oddity is easily explained. If an FLSA plaintiff succeeds on his claim, the FLSA provides that an employer shall be liable for the employee's unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The DCMWRA contains a similar liquated-damages provision, but the 2015 amendments increased the amount of those damages to three times the amount of unpaid wages. D.C. Code § 32-1012(a). Thus, Plaintiffs stand to recover much more if they can bring their DCMWRA claims collectively rather than just their FLSA claims.

will briefly explain how Rule 23 class actions and FLSA collective actions work before turning to Plaintiffs' motion.

### A.      Rule 23 Class Actions and FLSA Collective Actions

Both the FLSA and the DCMWRA require employers to pay their workers a minimum wage and, if the employee works more than forty hours in a workweek, overtime compensation. 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003.  Both statutes also permit claims to be brought on behalf of a group of workers.  29 U.S.C. § 216(b); D.C. Code § 32–1308(a)(1); *see also* D.C. Code § 32–1012(a) ("A civil action [under the DCMWRA] may be commenced according to § 32–1308.").  Under the FLSA, such actions are called "collective actions" and are subject to more lenient certification rules than those applicable to typical Rule 23 class actions.  *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 887 (N.D. Iowa 2008) ("Despite their confusing semantic similarities, the differences between class actions and collective actions are great.").  Rule 23 class actions require the plaintiff to demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Additionally, a prospective Rule 23 class representative must also satisfy one of the three requirements of Rule 23(b), *i.e.*, that prosecuting separate actions would create a risk of inconsistent adjudications; that injunctive or declaratory relief is appropriate; or that common questions of law or fact predominate and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *Id.* 23(b).

"The Federal Rules of Civil Procedure, including Rule 23 authorizing class actions, apply in all civil actions except when Congress has decided otherwise." 5 Moore's Federal Practice § 23.04 (3d ed. 2007) (citing Fed. R. Civ. P. 1; *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("[L]ike the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'") (quoting Fed. Rule Civ. P. 1) (emphasis in original). Congress did just that in the FLSA when it provided an "alternative means for obtaining class or group relief." *See* 5 Moore's Federal Practice § 23.04; 29 U.S.C. § 216(b). An FLSA collective action, unlike a Rule 23 class action, is not subject to the numerosity, commonality, and typicality requirements of Rule 23. *Hunter*, 346 F. Supp. 2d at 117. "Instead, a collective action has only two threshold requirements:  the plaintiff must show that she is similarly situated to the other members of the proposed class, and those other members must 'opt in' to the proposed class." *Id.*

In addition to the requirements for certification, the crucial difference between class and collective actions is Rule 23's opt-out procedure and the opt-in procedure used in collective actions.  In Rule 23 class actions, persons who meet the class definition are automatically joined, and are subject to all the principles of preclusion that come with participation in the case, unless they affirmatively opt out.  *See Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010); *McElmurry v. U.S. Bank Nat'l Assoc.*, 495 F.3d 1136, 1139 (9th Cir. 2007).  In FLSA collective actions, on the other hand, "no employee shall be a party plaintiff . . . unless he gives his consent in writing and such consent is filed in the court." 29 U.S.C. § 216(b).  "This opt-in language was added by Congress in order to limit the number and type of plaintiffs who could join collective actions." *Chase v. AIMCO Properties, L.P.*, 374 F. Supp. 2d 196, 199 (D.D.C. 2005).  The opt-

in requirement helps "'prevent[ ] large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.'" *United Food & Commercial Workers Union v. Albertson's, Inc.*, 207 F.3d 1193, 1200 (10th Cir. 2000) (quoting *Arrington v. Nat'l Broad. Co.*, 531 F. Supp. 498, 500 (D.D.C. 1982)). "The 'consent in writing' requirement . . . [sought] to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." *Arrington*, 531 F. Supp. at 502. Several Circuit courts have concluded, as a result of this fundamental difference, that class actions and collective actions are "mutually exclusive and irreconcilable." *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975); *LaChapelle v. Owens–Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975). Our D.C. Circuit has recognized that opt-in and opt-out procedures represent "opposite requirement[s]." *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006).

**B.     The 2015 DCMWRA**

The DCMWRA used to contain opt-in and written-consent language identical to the FLSA. The statute formerly provided, in relevant part, that

> [an] [a]ction to recover damages . . . may be maintained . . . by any 1 or more employees for and on behalf of the employee and other employees who are similarly situated. No employee shall be a party plaintiff . . . unless the employee gives written consent to become a party and the written consent is filed in the court in which the action is brought.

D.C. Code § 32-1012(b) (2001). The statute now provides that

> [a]ny employee or person aggrieved by a violation of . . . the Minimum Wage Revision Act . . . may bring a civil action in a court of competent jurisdiction against the employer . . . . Actions may be maintained by one or more employees who may designate an agent or representative to maintain such action for and on behalf of themselves or on behalf of all employees similarly situated.

D.C. Code § 32–1308(a)(1) (2015).

As can be seen, this amendment removed the sentence setting out the opt-in and written-consent procedures for group actions under the DCMWRA.  It also amended the wording regarding who may bring an action, providing that the employees may "designate an agent or representative" to maintain an action on their behalf.  *See id.*  Finally, the 2015 amendments added two subsections to this provision which help define what it means for employees to be "similarly situated":

> (2) For the purposes of this subsection, 2 or more employees are similarly situated if they:
>
>> (A) Are or were employed by the same employer or employers, whether concurrently or otherwise, at some point during the applicable statute of limitations period;
>> (B) Allege one or more violations that raise similar questions as to liability; and
>> (C) Seek similar forms of relief.
>
> (3) Employees shall not be considered dissimilar under this subsection solely because their:
>
>> (A) Claims seek damages that differ in amount; or
>> (B) Job titles or other means of classifying employees differ in ways that are unrelated to their claims.

*Id.* § 32-1308(a)(2)–(3).

As the Court observed in its last opinion, this change in statutory text undermines the notion that collective actions are still permitted under the DCMWRA.  *Vasquez*, 2016 WL 1559131, at *4.  "Without opt-in and written-consent procedures that restrict the right of recovery to those who affirmatively file consents to participate in the suit, group claims brought under the new [DCMWRA] are likely to resemble class actions, rather than collective actions." *Eley v. Stadium Grp., LLC*, Civil Action No. 14–cv–1594 (KBJ), 2015 WL 5611331, at *4 (D.D.C. Sept. 22, 2015) (quotation, citations, and alterations omitted); *Rivera v. Power Design, Inc.*, Civil Action No. 15-cv-0975 (TSC), 2016 WL 1226433, at *8 (D.D.C. Mar. 28, 2016).  If

DCMWRA class actions are truly treated as such, they must meet the more stringent certification requirements of Rule 23. *Rivera*, 2016 WL 1226433, at *8; *Eley*, 2015 WL 5611331, at *4.

No Court has squarely addressed the effect of the 2015 DCMWRA amendments. As the Court's prior opinion noted, in both *Eley* and *Rivera* the Courts declined to address the question without specific argument on it, which the plaintiffs in those cases – like Plaintiffs here – had failed to provide. *Vasquez*, 2016 WL 1559131, at *4. A renewed search of the case law surrounding the DCMWRA reveals that no Court has considered the topic since this Court did in April. As such, the Court writes on a clean slate.

### C.     The Parties' Arguments

Plaintiffs contend that the amended text of the DCMWRA permits both opt-in and opt-out group actions. Mot. at 2. Plaintiffs argue that the prior text of the statute "was formerly phrased as a prohibition or limitation" in that it did not permit collective actions unless each class member opted in by written consent. *Id.* According to Plaintiffs, in changing the law, the D.C. Council adopted "permissive language" which leaves open all forms of group actions, including both opt-in (collective) and opt-out (class) versions of such actions. *Id.*

In support of its interpretation of the amended text, Plaintiffs point to the legislative history of the 2015 DCMWRA amendments. *Id.* at 3. Plaintiffs claim that there is no indication that the legislators sought to remove the strong protection an FLSA-type collective action provides for workers in the District of Columbia. *Id.* Instead, the Council endeavored to strengthen worker protection laws and "'mak[e] it easier for workers to collect awards from businesses that steal [workers'] wages.'" *Id.* (quoting Apr. 10, 2014 Committee Report on Bill 20-671, the "Wage Theft Prevention Amendment Act of 2014").

Plaintiffs do not cite any language in the Committee Report on the amendments indicating that the legislators intended to preserve collective actions. *See id.* Rather, Plaintiffs argue the converse, claiming that "[t]here was no reported suggestion of removing the right to engage in an opt-in collective action." *Id.* Plaintiffs contend that it would be illogical for the Council to express an intent to strengthen wage laws and simultaneously remove one of the law's strongest features. *Id.* at 5. In light of the Council's pro-worker intent, Plaintiffs argue, it should not be assumed, absent some clear indication in the legislative history, that the Council intended to remove collective actions from the DCMWRA scheme. *Id.* at 5–6.

Finally, Plaintiffs compare the rigorous requirements of Rule 23 class actions with the more lenient standards for FLSA-type collective actions. *Id.* at 4–5. Plaintiffs note that Congress acted intentionally when it created less-restrictive means for workers to pursue wage claims on a group basis. *Id.* at 4. Further, Plaintiffs complain that meeting the requirements of Rule 23 would be particularly difficult for groups of construction workers like themselves. *Id.* at 5. Specifically, because it is estimated that their FLSA collective action as-certified contains at most around 10–12 members, it would be hard for Plaintiffs to meet the numerosity requirement of Rule 23. *Id.* Similarly, typicality would be tough to demonstrate if the workers had varying job duties or work schedules. *Id.* Thus, Plaintiffs conclude, the Court should be loath to deny them the advantages inherent in a collective action.

Defendant Grunley responds that the removal of the opt-in and written-consent procedures language from the text of the DCMWRA evinces a clear intent to remove collective actions from the statute. Grunley Opp. at 4. Moreover, in Grunley's view, "[t]he 'opt-in' and 'opt-out' procedures inherent in collective actions and class actions, respectively, are mutually exclusive." *Id.* at 5. Grunley cites numerous cases for the proposition that collective and class

actions are fundamentally divergent and, as a result, the DCMWRA cannot possibly permit both at once. *Id.* Grunley reasons that because the DCMWRA cannot allow both opt-in and opt-out class relief simultaneously, and because the DCMWRA no longer contains opt-in procedures, Rule 23 must govern any group action under the DCMWRA. *Id.* at 5–6.

In fact, Grunley argues, this Court has concluded that the opposite situation – permitting pre-2015 DCMWRA claims to be brought as a Rule 23 class action – is impermissible. In *Driscoll v. George Washington University*, 42 F. Supp. 3d 52, 60 (D.D.C. 2012), the Court compared the DCMWRA opt-in procedure with the opt-out procedure in Rule 23 to determine which would control in a group claim under the pre-2015 version of the DCMWRA brought in federal court. To resolve the inconsistency between the two, the Court applied the framework for resolving federal-state conflicts implicating the Federal Rules provided in *Shady Grove*, 559 U.S. 393. *Driscoll*, 42 F. Supp. 3d at 60. The Court found, under *Shady Grove*, that Rule 23's opt-out procedure would abridge the "substantive" right conferred in the DCMWRA through the opt-in mechanism. *Id.* at 62. In other words, permitting a Rule 23 class to bring DCMWRA claims would eliminate the protections for both workers and employers that the opt-in procedure provides. *Id.* According to Grunley, if it was not possible under *Shady Grove* to allow a pre-2015 DCMWRA claim to proceed on a group basis under Rule 23, surely the converse – permitting a post-2015 DCMWRA claim to proceed as a collective action – which Plaintiffs propose here, also cannot be true. Grunley Opp. at 7–8. Grunley asserts that in the absence of special procedures, like those in FLSA, for enforcing rights on a group basis, such claims must be maintained according to the procedures in Rule 23. *Id.* (citing *Halliwell v. A-T Solutions*, 983 F. Supp. 2d 1179, 1183–84 (S.D. Cal. 2013)).

Defendant Calderon joins in Grunley's opposition, but adds a few additional thoughts of its own.  Calderon Opp.  First, Calderon notes that Plaintiffs fail to point to any language in the legislative history showing that the D.C. Council did *not* intend to change DCMWRA group-action procedures through the 2015 amendments.  *Id.* at 2.  Calderon views Plaintiffs' motion as an attempt to backpedal against what the Council has done.  *Id.*  Second, Calderon argues that even if the purpose of the Council was to strengthen the DCMWRA to prevent the theft of employees' hard-earned wages, this case does not involve any purposeful deprivation of wages.  *Id.* at 3.  Instead, at worst, Calderon and Grunley were simply unaware that Garfias failed to pay Plaintiffs.  *Id.*  Thus, even legislative history supporting aggressive wage laws should not counsel in favor of an "expansive interpretation" of the 2015 amendments allowing collective actions.  *Id.*

Plaintiffs reply first that, in their view, opt-in and opt-out group actions are not mutually exclusive.  Reply at 2–3.  Second, Plaintiffs claim that the opt-in and opt-out procedures of collective and class actions, respectively, are merely procedural and, as a result, do not conflict with each other.  *Id.* at 3–4.  Finally, Plaintiffs posit that the lowered commonality and numerosity requirements for collective actions align with the D.C. Council's intent to enact strong protections for D.C. workers.  *Id.* at 4–5.

### D.  The 2015 DCMWRA Eliminated Collective Actions as an Avenue for Relief

The Court finds Plaintiffs' arguments unpersuasive.  It is well-settled that the Court must apply the plain text of the DCMWRA unless it is ambiguous.  "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  Legislative history, on the other hand, "can serve to

inform the court's reading of an otherwise ambiguous text," but "it cannot lead the court to contradict the legislation itself." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1237 (D.C. Cir. 2003).

Here, the 2015 amendments to the DCMWRA eliminated the plainly worded statutory text that required opt-in and written-consent procedures for maintaining a collective action.  The Court will not presume that the D.C. Council's deletion of that text was meaningless, as Plaintiffs would have it.  Indeed, it is well-settled that the opt-in feature is an indispensable part of collective actions.  *See Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1084 (S.D. Iowa 2007) ("The requirement that potential plaintiffs 'opt-in' to the collective action is the primary feature distinguishing collective actions under the FLSA from class actions that are subject to Federal Rule of Civil Procedure 23."); *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 731 (M.D. Pa. 2007) ("The 'opt-in' mechanism distinguishes actions under § 216(b) from standard class actions under Federal Rule of Civil Procedure 23."); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1807 (2007) ("Probably the most significant difference in procedure between the FLSA and Rule 23 is that the statute contains a requirement that plaintiffs desiring to be included in the litigation must 'opt in' to the suit by filing a written consent with the court.").  Without it, the present version of the DCMWRA looks like any other state wage and hour law that lacks a special enforcement procedure.  In other words, it looks like it could support a Rule 23 class action, but lacks the key provision – opt-in – that would support a collective action.[3]

---

[3] Interestingly, the present version of the DCMWRA now reads like the original enactment of the FLSA in 1938, which provided that an action "may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated." *See* 29 U.S.C. § 216(b) (1938).  Actions under this first iteration of the Act were generally treated as having an opt-in requirement although the statute lacked language to that effect. *See* William C. Jhaveri-Weeks & Austin Webbert, *Class Actions Under Rule 23 and Collective Actions Under the Fair Labor Standards Act:  Preventing the Conflation of Two Distinct*

And creative reading of the legislative history of the statute cannot restore the opt-in

procedures which the D.C. Council chose to delete.  *Recording Indus. Ass'n of Am.*, 351 F.3d at

1237.  Moreover, even if relevant, the legislative history of the 2015 DCMWRA amendments

provides Plaintiffs little help.  Nowhere in it is there any discussion of the deletion of the opt-in

language from the statutory text.  General statements in the legislative history concerning the

D.C. Council's interest in strong wage laws do not lead to the conclusion that the Council wished

the practice of opt-in collective actions to continue.  Such collective actions are not necessarily

more protective of wage earners than Rule 23 class actions.  Each type of group action carries

with it different benefits and burdens.  Opt-in procedures give "plaintiffs the advantage of lower

individual costs to vindicate rights by the pooling of resources" and allows for "efficient

resolution in one proceeding of common issues of law and fact arising from the same alleged . . .

activity."  *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989).  The opt-in procedure also

helps employers because it "prevents large group actions, with their vast allegations of liability,

from being brought on behalf of employees who had no real involvement in, or knowledge of,

the lawsuit."  *Arrington*, 531 F. Supp. at 500.  By contrast, Rule 23 opt-out class actions are more

favorable to employers on the front end because they are more difficult to certify.  *See* Fed. R.

Civ. P. 23(a)–(b).  But the difficulties plaintiffs face in obtaining Rule 23 class certification are

---

*Tools to Enforce the Wage Laws*, 23 Geo. J. on Poverty L. & Pol'y 233, 239 (2016) (citing *Pentland v. Dravo Corp.*, 152 F.2d 851, 853–54 (3d Cir. 1945) (collecting cases)).  At first glance, this parallel might appear to help Plaintiffs' argument.  If the language of the FLSA in 1938 supported opt-in group claims without an express opt-in requirement, then surely the 2015 DCMWRA must, too.  But such an interpretation would miss half the story.  Also in 1938, the federal courts adopted the Federal Rules of Civil Procedure, including Rule 23.  Fed. R. Civ. P. 23 advisory committee's note to subdivision (a) (1937).  Under the original version of that Rule, the modern Rule 23(b)(3) "damages" class action, known as a "spurious" class action, was held to have an opt-in requirement.  *See* John G. Harkins, Jr., *Federal Rule 23 – The Early Years*, 39 Ariz. L. Rev. 705, 707 (1997).  Courts viewed FLSA group actions as spurious class actions under Rule 23.  *Pentland*, 152 F.2d at 853–54.  Thus, it was not a special feature of the FLSA that imbued these group claims with an opt-in condition.  Instead, that was the way *all* damages class actions were treated at the time under Rule 23.  Therefore, any analogy to the original text of the FLSA does not answer the question of whether the DCMWRA's current language, standing alone, contains opt-in or written consent requirements.

proportional to the benefits they gain – namely, automatic joinder of all class members without the arduous opt-in process. *Alvarez*, 605 F.3d at 448. For that reason, it is not unreasonable for the D.C. Council both to desire to increase wage protection and to decide that DCMWRA group claims should be governed by Rule 23. Indeed, many other states' wage laws operate in that way. *See, e.g.*, *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (Illinois Minimum Wage Law); *Morris v. Affinity Health Plan, Inc.*, 558 F. App'x 51, 52 (2d Cir. 2014) (New York Labor Law); *Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1305 (10th Cir. 2014) (Kansas Wage Protection Act).

And although the plain text of the amended 2015 DCMWRA does not prohibit opt-in collective actions, the deletion from text of the express opt-in and written-consent procedures which are integral to a collective action militates in favor of the conclusion that such procedures are no longer allowed. *See Abbott v. Abbott*, 560 U.S. 1, 33 (2010) ("In interpreting statutory text, we ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning."). In the absence of statutory language requiring alternate procedures, Rule 23 applies to any attempt to bring a group claim in federal court. *See* 5 Moore's Federal Practice § 23.04 (citing Fed. R. Civ. P. 1; *Califano*, 442 U.S. at 700); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J. 1988) ("In most federal class actions, . . . the issues of joinder among, and notice to, potential class members are governed by Fed. R. Civ. P. 23."). This principle applies with equal force to state-law claims brought in federal courts. *See Shady Grove*, 559 U.S. at 400 (applying Rule 23 to a claim brought under New York law); *Marquez v. Partylite Worldwide, Inc.*, No. 07 C 2024, 2007 WL 2461667, at *3 (N.D. Ill. Aug. 27, 2007) (noting "the assumption that the usual federal procedures," including Rule 23, "apply in each case or controversy," including state-law wage claims brought on a group basis).

Without express opt-in and written-consent procedures, the Court has no basis on which to conclude that the DCMWRA provides an alternative to the usual Rule 23 class action procedures.[4]  Accordingly, Rule 23 will control any DCMWRA group claims brought in this matter.  *See Marquez*, 2007 WL 2461667, at *3.[5]

Plaintiff's request that this Court certify an opt-in collective action under the DCMWRA will therefore be denied.  Defendant Grunley suggests in its opposition that because Plaintiffs have not met the strictures of Rule 23, the Court should deny certification of an opt-out class action at this time.  Grunley Opp. at 8.  Because it is clear that Plaintiffs made no effort to do so in their motion, the Court will not preemptively decide that issue.  If Plaintiffs think they can make out a Rule 23 class action, they may seek certification as permitted in that Rule.

---

[4] For the same reason, the application of Rule 23 opt-out procedures to DCMWRA claims after the 2015 amendments no longer runs afoul of the "substantive" right created by the opt-in procedure that the DCMWRA previously contained.  *See Driscoll*, 42 F. Supp. 3d at 60; *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001) (finding that because there "is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the New York Minimum Wage Act," the plaintiffs sought class certification under Rule 23).

[5] Plaintiffs' cited cases do not alter this result.  Indeed, they do not even speak to the problem presented here.  In the cases Plaintiffs cite for the proposition that opt-in and opt-out procedures are not mutually exclusive, the courts determined whether an FLSA collective action could be litigated concurrently with a state-law wage claim brought as a Rule 23 class action.  *See Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 673–76 (D. Md. 2011); *Ervin*, 632 F.3d at 974; *Lindsay*, 448 F.3d at 424–25; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164–65 (S.D.N.Y. 2008); *Bouaphakeo*, 564 F. Supp. 2d at 887–88; *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 731 (M.D. Pa. 2007).  But the propriety of Plaintiffs trying to bring their DCMWRA claims as a Rule 23 class action alongside their FLSA collective action is not before the Court at this time, and that question is itself unsettled.  *Compare Bouaphakeo*, 564 F. Supp. 2d at 888, *with Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 188–89 (M.D. Pa. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification of an Opt-In Collective Action Under the D.C. Minimum Wage Revision Act [Dkt. 48] will be **DENIED**.  An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.


Date:  August 2, 2016                                    _____

                                                         G. MICHAEL HARVEY
                                                         UNITED STATES MAGISTRATE JUDGE